## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SANTOS PADRO-PEREZ ET AL**<br>　　**Plaintiffs**<br><br>　　　**v.**<br><br>**UNITED STATES OF AMERICA ET AL**<br>　　**Defendants** | **Civil No. 04-1229(PG)** |

### MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiffs, Santos Padró-Pérez and Ana M. Nazario-Pietri (hereafter "plaintiffs"), filed their complaint on March 19, 2004, seeking damages as a result of actions taken by the Farm Service Agency[1] with regard to loan proceeds to which the plaintiffs claim they are entitled (**Docket No. 1**). Now before the Court is the defendants' Motion to Dismiss and supporting memorandum, plaintiffs' response, defendants' reply[2] and plaintiffs' sur-reply[3] (**Docket Nos. 3, 23, 28, 25**). The United States contends dismissal is proper as the Court lacks subject matter jurisdiction, the complaint fails to state a claim upon which relief can be granted and, more so, plaintiffs have failed to exhaust their administrative remedies, and there has been no waiver of sovereign immunity.

The matter was referred to the undersigned Magistrate-Judge for Report and Recommendation on July 6, 2004 (**Docket No. 12**).

---

[1]The Farm Service Agency (hereafter "FSA") is an agency of the United States Department of Agriculture. 7 C.F.R. § 780.1. Federal farm loan issues are overseen and controlled by the FSA. *Viers v. Glickman*, No. 4-99-CV-90431, 2000 WL 33363197 (S.D. Iowa Nov. 28, 2000). The FSA cannot be sued separately from the United States Department of Agriculture. *Curtis v. Farm Serv. Agency*, No. 4:00-CV-93, 2001 WL 822413 (W.D. Mich. June 22, 2001).

[2]Defendant filed its reply as an attachment to its motion for leave to file reply (**Docket No. 24**). Leave to file was granted (**Docket No. 26**) and defendant re-filed its reply under **Docket No. 28**. It should be noted that the pleading is improperly entitled "sur-reply." *See* **Docket No. 26.**

[3]Plaintiffs did not seek leave to file the sur-reply.

## I.    Factual and Procedural Background

Plaintiffs bring this cause of action against the United States of America and the United States Department of Agriculture.  The complaint alleges that the plaintiffs sought from the Farm Service Agency (hereafter "FSA") a loan in the amount of $70,000 the proceeds to be used to develop and farm 286.46 acres of land.  The loan was approved for $50,000 and the plaintiffs were notified of the loan approval via a letter from the Farm Service Agency on October 13, 1999 (**Docket No. 1**, Ex.).  Three checks were issued from the loan proceeds on January 28, 2000, totaling $6,900.  *Id.*  The remaining balance up to the total of $50,000 was deposited at a bank to be disbursed and used upon request but subject to approval by the FSA.

Thereafter, on April 19, 2000, the FSA notified the plaintiffs that a review performed by the National Office indicated that plaintiffs had received "unauthorized assistance" on their loan of $50,000, inasmuch as it was considered they did not qualify for the loan (**Docket No. 28**, Ex. C).  The letter further provided that if plaintiffs could not show that they were eligible for the assistance the funds were to be repaid to FSA.  *Id.*  The review process revealed the account could be considered in breach, with $50,446 (i.e., actual balance of account) due and payable.  *Id.*  The plaintiffs were advised that a meeting was being set for May 2, 2000, to discuss the basis for this determination and to provide the plaintiffs an opportunity to submit documents or information that could prompt reconsideration of the determination.  *Id.*  The plaintiffs were advised to contact the FSA if they could not attend the meeting and further apprised that it was "important" that they respond to the notification.  *Id.*  The letter further indicated that if no response was received  within 30 days, FSA would begin collection action.  *Id.*

Plaintiffs allege that they supplied FSA with all the documents and evidence that was requested from them, including form FMHA 1940-38 "Request for Lenders Verification of Loan Application," but that the FSA would not release the remainder of the loan proceeds.

On February 13, 2003, plaintiffs were advised by the FSA that it was reducing the assistance in the operating loan and refunding the funds in the supervised bank account of the operating loan (**Docket No. 28**, Ex. D). Plaintiffs were advised that this action was taken as a result of plaintiffs' failure to attend a meeting previously set for February 27, 2002, and as a result of plaintiffs' failure to meet on several alternate dates including December 10, 2001, April 5, 2002, August 9, 2002 and August 17, 2002. *Id.* The letter also indicated that plaintiffs did not attend the last appointment scheduled for December 30, 2002. *Id.* The plaintiffs were further advised that the account was behind schedule and that as of February 13, 2003, the amount due was $57,110, less $43,100, which equals $14,010 and the daily accumulated interest of $6.893. *Id.*

The letter provided to plaintiffs four options to contest this action. The first option was to request reconsideration, in writing, no later than 30 days from the date of receipt of the letter. *Id.* The plaintiffs were advised that if reconsideration was not sought by March 17, 2003, then the right to request the same was waived. *Id.* Further, plaintiffs could not request reconsideration if they sought mediation or an appeal to the National Appeals Division (hereafter "NAD"). *Id.*

The second option posed was that plaintiffs could obtain an independent appraisal if they believed the FSA appraisal was incorrect. *Id.* Were plaintiffs to exercise this option, they were required to notify the FSA , no later than 30 days from the date of receipt of the letter. *Id.* The plaintiffs were advised that if they did not submit an independent

appraisal by March 17, 2003, then they waived their right to have the FSA reconsider the appraisal.  *Id.*   If the plaintiffs determined not to submit an independent appraisal, they were advised that they could appeal the FSA appraisal directly to the NAD.  *Id.*

The third option available to plaintiffs was mediation or alternative dispute resolution.  Again, plaintiffs were required to submit the request for remedy for it to be received by the FSA, within the 30-day period previously mentioned.  *Id.*  The plaintiffs were advised that they could appeal directly to the NAD without mediation or alternative dispute resolution, but that once an NAD appeal hearing began, the plaintiffs could not request alternative dispute resolution.  *Id.*

The last option available to plaintiffs was to appeal the decision of the FSA directly to the NAD.  The plaintiffs were advised that it was required the request for appeal be made within 30 days from receipt of the letter.  *Id.*

On April 8, 2003, the plaintiffs were advised by the FSA that the balance of the loan ($43,100) had been withdrawn from the lending institution (**Docket No. 1**, Ex.).  Next, on May 28, 2003, the FSA sent to plaintiffs a "Notification of Intent to Accelerate or Continue Acceleration of Loans and Notice of Your Rights" (**Docket No. 28**, Ex. E).  The notice indicated that plaintiffs owed $12,973 in their FSA loan payments.  *Id.*  The plaintiffs were advised that there were steps they could take before FSA accelerated the loan such as asking for a meeting within 15 days from the date of the notice.  *Id.*  A form was provided for plaintiffs' use and to enable requesting such a meeting.  *Id.*  Alternatively, plaintiffs could request an administrative appeal from the NAD.  Under this course of action, it was required that the request for appeal be postmarked no later than 30 days from the date of receipt of notice.  *Id.*  The plaintiffs were advised that if they did not respond to the

acceleration notice, by either requesting a meeting or seeking appeal, that the FSA would accelerate and continue to accelerate the loan. *Id.*

Plaintiffs allege that they qualified for the $50,000 loan, and that as a consequence of the defendants' actions they have been unable to develop their farm and have lost more than $1,000,000 in earnings (**Docket No. 1**). They also allege that the defendants' actions have caused them suffering and damage in an amount of more than $3,000,000. *Id.* Finally, plaintiffs allege that their pecuniary losses and sufferings are a consequence of defendants' actions. *Id.*

The Civil Cover Sheet which accompanied the complaint when the case was filed is marked under the "Torts" section, as 380 - Other Personal Property Damages.

## II.    Motion to Dismiss

The United States of America and the United States Department of Agriculture, Farm Service Agency, filed a motion to dismiss pursuant Fed.R.Civ.P. 8(a), 12(b)(1) and 12(b)(6) (**Docket No.** 3). The defendants contend that there is no applicable waiver of sovereign immunity. Further, they contend that to the extent the plaintiffs' claims are based in tort or in contract they should be dismissed pursuant to Rule 12(b)(1). Finally, they argue that the complaint  fails to state a claim upon which relief can be granted.

Plaintiffs respond that this action does not lie in tort but is a contract action and, as such, plaintiffs are not limited by the jurisdictional requisites of the Federal Tort Claims Act. Plaintiffs posit that this Court has jurisdiction as this case raises a federal question.

### A.    Legal Standard

Under Rule 12(b)(1), defendants may move to dismiss an action against them based on the lack of federal subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). Since federal

courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *Sarboso Publ'g, Inc. v. Caiman Records Am., Inc.,* 141 F.Supp.2d 224, 226 (D.P.R. 2001) (citations omitted). In assessing a motion to dismiss for lack of subject-matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank,* 140 F.3d 12 (1st Cir.1998) (citing *Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1 (1st Cir.1987)). Additionally, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *Sarboso Publ'g,* 141 F.Supp.2d at 226 *(*citing *Land v. Dollar,* 330 U.S. 731, 734-35 (1947); *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996) (citation omitted); *Baker v. Westin Rio Mar Beach Resort, Inc.,* 194 F.R.D. 393, 395 (D.P.R.2000)). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), courts "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted . . ." *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996).

**B.      Federal Tort Claims Act**

Despite the fact that the Civil Cover Sheet (Form JS-44; Rev. 3/99) indicates that this case lies in tort (under the "Other Personal Property Damage" category), the record reflects that following the filing of the defendants' motion to dismiss, plaintiffs advised that this case does not lie in tort but rather is a breach of contract action.

Regardless, the undersigned will first address the request for dismissal under the Federal Tort Claims Act (hereafter "FTCA") to the extent that plaintiffs seek recovery under a theory of tort. The FTCA waives the sovereign immunity of the United States with

respect to tort claims. *Román v. Townsend,* 224 F.3d 24, 27 (1st Cir. 2000) (citing 28 U.S.C. §§ 2674). It also provides the exclusive remedy to compensate for a federal employee's tortious acts committed within the scope of his or her employment. *Id.* (citing 28 U.S.C. §§ 2679). Under the FTCA it is the plaintiff's burden to prove the existence of subject matter jurisdiction. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).

In this regard, it is to be noted that when a plaintiff claims for damages which sound in tort, the plaintiff must first proceed administratively against the United States pursuant to the FTCA.   The defendants argue that because plaintiffs did not exhaust their administrative remedies, this case must be dismissed.   The defendants point out that plaintiffs have not alleged that they sought administrative remedies for the tort claim.  The FTCA provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. . . .

28 U.S.C. § 2675(a).

This provision bars a plaintiff from bringing suit in federal court until they have exhausted their administrative remedies. *McNeil v. United States,* 508 U.S. 106, 113 (1993). Indeed, a federal court has no jurisdiction to hear a cause of action under the FTCA unless the plaintiff has first presented a written administrative claim for a sum certain. *Coska v. United States,* 114 F.3d 319, 323 n. 8 (1st Cir. 1997); *Corte-Real v. United States,* 949 F.2d 484, 485-86 (1st Cir. 1991).  Failure to satisfy this requirement deprives a district court of jurisdiction over a suit instituted by an injured party.   *Id.*  In the case at bar, there is no

indication that plaintiffs sought to exhaust administrative remedies.  Because plaintiffs failed to comply with this administrative requisite, any tort claim must be **DISMISSED**.

Additionally, claims brought by the plaintiffs are barred by the FTCA since sovereign immunity has not been waived by the government.  The Federal Tort  Claims Act "shall not apply to . . . [a]ny claim arising out of . . . libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C. §§ 2680(h).  The United States has reserved its immunity with regard to both unlawful interference with existing contract rights and to unlawful interference with prospective contractual relationships. *See Cooper v. American Auto. Ins. Co.,* 978 F.2d 602, 613 (10th Cir.1992); *Art Metal-USA, Inc. v. United States,* 753 F.2d 1151, 1154 (D.C.Cir.1985) (court lacked jurisdiction over claim based on allegation that General Service Administration (GSA) employees informed newspapers that plaintiff improperly handled its GSA contract, resulting in plaintiff's loss of business with defendant and third parties); *Segarra Ocasio v. Banco Regional De Bayamon,* 581 F.Supp. 1255, 1257 (D.P.R.1984).  Inasmuch as misrepresentation and interference with contract rights are not cognizable under the FTCA, the claims of the plaintiffs must be **DISMISSED**.

Finally, even if plaintiffs' claims were legally sufficient, any proposed tort claims cannot stand because claims brought under the FTCA must be brought solely against the United States rather than against an individual agent or, as here, a federal agency.  See *FDIC v. Meyer,* 510 U.S. 471, 476 (1994) (discussing 28 U.S.C. §§ 2679(a)) ("[I]f a suit is 'cognizable' under §§ 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name,' despite the existence of a sue-and-sued clause.").

Therefore, it is **RECOMMENDED** that any claims brought under the FTCA be **DISMISSED** for want of jurisdiction.

### C.      Sovereign Immunity

The defendants next contend that the United States has sovereign immunity from suit and consequently dismissal is appropriate.  In order for a Federal Court to exercise jurisdiction over a claim against the United States, there must be a clear statutory waiver of sovereign immunity.  "Absent a waiver, a sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 475 (1994) (*citing Loeffler v. Frank,* 486 U.S. 549, 554 (1988); *Federal Hous. Admin. v. Burr,* 309 U.S. 242, 244 (1940)).  A suit against an executive department of the United States, or against departmental employees in their official capacities, is a suit against the United States and is therefore subject to the defense of sovereign immunity. *Hawaii v. Gordon,* 373 U.S. 57, 58 (1963).

Only Congress can waive the sovereign immunity of the United States. *United States v. Testan,* 424 U.S. 392, 399 (1975).  Waivers of sovereign immunity cannot be implied, but must be unequivocally expressed.  *Lane v. Pena,* 518 U.S. 187, 192 (1996) (waiver of sovereign immunity "must be unequivocally expressed in the statutory text . . . and will not be implied").  Moreover, even when Congress expressly waives the Federal Government's immunity from suit, that waiver must be strictly construed and must not be enlarged beyond the literal language of the statute. *Library of Congress v. Shaw,* 478 U.S. 310, 315-318 (1986).

Sovereign immunity is jurisdictional in nature; without a clear waiver, a court has no jurisdiction over a claim against the United States or its agencies or officials. *United*

*States v. Mitchell,* 463 U.S. 206, 212 (1983) ("[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

The defendants' position is well-taken.  In the instant case, plaintiffs bring suit against the United States of America and the United States Department of Agriculture.  As a result, the plaintiffs are required to seek redress against the Federal Government under the provisions of a claim that expressly waives the United States' immunity from suit.  This the plaintiffs have failed to do.  While plaintiffs argue that this Court has jurisdiction, pursuant to 28 U.S.C. § 1331[4] nowhere in the complaint is there a jurisdictional statement setting forth § 1331 or any other statute.  Rather, the complaint states that this case comes under the jurisdiction of this Court because the "defendant is the United States of America and one of Its Department and the subject matter arises under the Farm Service Agency of the Department of Agriculture." (**Docket No. 1**, para. 1).  It is required that the Plaintiffs "set forth in the complaint the specific statute containing a waiver of the government's immunity from suit." *Millet v. United States Dep't of Army*, 245 F.Supp.2d 344, 351 (D.P.R. 2002) (citations omitted).  There is nothing contained in the complaint referring to a specific statute which waives the government's immunity from suit.

Accordingly, plaintiffs' claims against the United States fail as a matter of law because they did not identify an applicable and relevant waiver of sovereign immunity.

D.      **The Department of Agriculture as a Defendant**

Despite the lack of a jurisdictional statement in the complaint, plaintiffs in their response to the motion to dismiss, state that jurisdiction lies under 28 U.S.C. § 1331, and

---

[4]The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws of treaties of the United States.  28 U.S.C. § 1331.

that this is a civil action arising under a federal question.  They indicate that "the *defendant in this case is the United States of America - U.S. Department of Agriculture who granted a loan through its Farm Service Agency.*" (Court's emphasis.)  Plaintiffs state that the U.S. Department of Agriculture was created under the Constitution and Laws of the United States.  It this regard plaintiffs appear to argue that the sole defendant is the Department of Agriculture and that in itself this is sufficient to invoke this Court's jurisdiction.  The government responds that before seeking redress in the District Court,[5] plaintiffs are required to appeal the determination of ineligibility to the National Appeals Division.  Because the plaintiffs did not exhaust their administrative remedies through the National Appeals Division, the government argues that this Court lacks jurisdiction to hear the matter.

Exhaustion is a jurisdictional prerequisite to suits against the Department of Agriculture.  *See Bastek v. Federal Crop Ins. Corp.,* 145 F.3d 90 (2d Cir. 1998); *United States v.* Cyr, No. Civ. 03-97-B-W, 2004 WL 1571808 (D. Me. Mar. 26, 2004); *Ace Prop. & Cas. Ins. Co.,* 60 Fed.Cl. 175 (2004); *Gilmer-Glenville, Ltd. P'ship v. Farmers Home Admin.,,* 102 F.Supp.2d 791 (N.D. Ohio 2000); *Farmers & Merch. Bank v. United States*, 43 Fed.Cl. 38 (1999); *Bentley v. Glickman*, 234 B.R. 12 (N.D. N.Y. 1999); *Calhoun v. USDA Farm Service Agency*, 920 F.Supp. 696, 701-702 (N.D. Miss. 1996).  Congress has specifically provided for exhaustion through the enactment of legislation.  Indeed, with

---

[5]Ordinarily the Court of Federal Claims has general jurisdiction under the Tucker Act to adjudicate contract claims for money damages against the United States, said jurisdiction exclusive for monetary claims against the United States in excess of $10,000.00.  28 U.S.C. § 1491, 28 U.S.C. § 1346(a)(2) (1994).  However, the 1994 Department of Agriculture Reorganization Act created a mandatory administrative appeals process, the outcome of which may be appealed exclusively to the United States District Courts, thus, depriving the United States Court of Federal Claims of subject matter jurisdiction over a contract claim.  7 U.S.C. § 6999 (1994).  *See Ace Prop. & Cas. Ins. Co.,* 60 Fed.Cl. 175 (2004); *Farmers & Merch. Bank v. United States*, 43 Fed.Cl. 38 (1999)

respect to appeals of administrative determinations within the Department of Agriculture,

7 U.S.C. § 1912(e) provides that:

> Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against--
> (1) the Secretary;
> (2) the Department; or
> (3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e).

Additionally, Section 1951.904 of title 7 of the Code of Federal Regulations sets forth procedures for seeking review of the FSA loan servicing officials' decisions that adversely affect a participant. *See also* 7 C.F.R. § 780 et seq.; *Flint v. United States Dep't Agric.,* 39 F.Supp.2d 418, 421-22 (D.Vt.1997) (describing the administrative appeal process undertaken by plaintiffs challenging a FSA homestead protection denial).  Moreover, 7 U.S.C. § 6991 *et seq.,* in an equally straightforward manner, sets out the applicable procedures for appealing an FSA decision. The statute also explicitly states:  "A final determination of the Division shall be reviewable  and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of title 5." 7 U.S.C. § 6999 (1994).  The term "Division" is defined in the same chapter of Title 7 as, "The National Appeals Division established by this chapter."  7 U.S.C. § 6991(6) (1994).  The plain language of the statute demonstrates a clear legislative intent to require all parties dissatisfied with FSA decisions to exhaust the NAD appeals process, before filing suit in any court.  *See Hallstrom v. Tillamook County,* 493 U.S. 20, 28 (1989) (absent a clearly expressed legislative intention to the contrary, the words of the statute are conclusive).

Most important is that "[s]tatutory exhaustion requirements are mandatory, and courts are not free to dispense with them." *Bastek,* 145 F.3d at 94.

In the case at bar, the letters sent to the plaintiffs over the course of the acceleration of loans did set forth their right to seek redress which included the right to a hearing before the National Appeals Division.  It appears, however, that the plaintiffs took no steps to stop the acceleration action and that plaintiffs never followed through with the exhaustion of their administrative remedies.  By neglecting  to appeal to the National Appeals Division the plaintiffs failed to exhaust their administrative remedies.  As a result, this Court has no jurisdiction to hear the matter.

Based on the foregoing analysis, it is therefore **RECOMMENDED** that the Motion to Dismiss be **GRANTED** for failure to exhaust administrative appeals pursuant to 7 U.S.C. § 6912(e).

### III.    CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the defendants' Motion to Dismiss be **GRANTED**  (**Docket No. 3**).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice.  Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986*); Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980).  The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District

Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, on this 29th day of November, 2004.

**S/AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**